**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**LOUIS J. DOMENICO III,**                     :

       **Plaintiff**                     :     **CIVIL ACTION NO. 3:15-0530**

       **v.**                     :          **(JUDGE MANNION)**

**COLONIAL USED AUTO SALES**      :
**INC., RALPH VECCHIO SR.,**
**RALPH VECCHIO, JR., TERRY**      :
**VECCHIO, and MARGUERITE**
**VECCHIO**                     :

       **Defendants**                     :

## <u>MEMORANDUM</u>

Pending before the court are six motions *in limine*, (Doc. 43), filed by

plaintiff Louis J. Domenico III ("Mr. Domenico"), and a motion *in limine*, (Doc.

41), filed by defendants Colonial Used Auto Sales Inc. ("Colonial"), Ralph

Vecchio, Jr. ("Mr. Vecchio"), Terry Vecchio ("Mrs. Vecchio"), Ralph Vecchio,

III ("Ralph III"),[1] and Marguerite Vecchio ("Marguerite"), (Doc. 41). Mr.

Domenico alleges that the defendants discriminated, harassed, and retaliated

against him while he was employed by defendant Colonial. In preparation for

trial, Mr. Domenico seeks to exclude any evidence that a lack of work was the

---

[1] The caption filed in this case suggests that Colonial Used Auto Sales Inc. is owned by father and son Ralph Vecchio Sr. and Ralph Vecchio, Jr. Throughout their motions, the parties refer to Ralph Vecchio, Jr. as the father of Ralph Vecchio, III. The court will also refer to the parties in this fashion.

basis for his termination and to exclude certain character evidence. Defendants seek to limit the scope of testimony offered by Mr. Domenico's wife, Sandra Christiane Kathleen Domenico ("Mrs. Domenico"), if she is called to testify at trial. For the reasons discussed below, the defendants' motion is **GRANTED** and Mr. Domenico's motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On or about March 1, 2003, Mr. Domenico was hired by Colonial as a car salesman. Colonial is a used car dealership in Bartonsville, Pennsylvania owned by defendants Mr. Vecchio and Ralph III. The dealership is also managed by others in Mr. Vecchio's immediate family. Defendant Mrs. Vecchio is employed by Colonial as a clerk and is Mr. Vecchio's wife. Defendant Marguerite is also employed by Colonial as a clerk and is Mr. Vecchio's daughter.

Mr. Domenico alleges that beginning in 2004 he was subject to continuous sexual harassment by Marguerite, which included unwanted sexual advances and invitations, touching, berating, and physical threats. Mr. Domenico also alleges that he reported these actions in September of 2012

to Mr. Vecchio, in April of 2013 to Ralph III, and in July of 2013 to Mr. and Mrs. Vecchio. He alleges that no remedial actions were taken after his internal complaints. On or about July 8, 2013, a disagreement ensued between Mr. Domenico and Ralph III relating to Mr. Domenico's employment at Colonial, the facts of which are in dispute. On July 10, 2013, Domenico's employment with Colonial was terminated.

On December 23, 2013, Mr. Domenico filed a Charge of Discrimination with the Equal Opportunity and Employment Commission ("EEOC"), which was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"). On January 12, 2015, having received a Notice of Right to Sue from the EEOC and having exhausted administrative remedies, Mr. Domenico filed a complaint in the Eastern District of Pennsylvania alleging sex-based discrimination, sex-based harassment, retaliation, and negligence under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., and similar claims under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §951 *et seq.*, (Doc. 1). On March 13, 2015, the case was transferred to the Middle District of Pennsylvania, after which Mr. Domenico filed an Amended Complaint, (Doc. 21). On May 26, 2015, the defendants filed their Answer to Mr. Domenico's Amended Complaint, (Doc. 22). Discovery in the

matter closed on July 31, 2016. A final pretrial conference is scheduled for September 30, 2016 and trial is currently scheduled to begin on October 31, 2016. The parties now seek certain evidentiary rulings in preparation for trial, (Docs. 41– 45, 50).

## II.    LEGAL STANDARD

Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted). This standard includes evidentiary rulings admitting or excluding oral testimony at trial. Donlin v. Philips Lighting North America Corp., 581 F.3d 73, 80 (3d Cir. 2009). This discretionary standard applies where the evidentiary ruling relies upon the application of the Federal Rules of Evidence to the case, as opposed to an interpretation of the rules. Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994).

A district court's decision to admit or exclude evidence is guided by the Federal Rules of Evidence. "The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for

the truth." Univac Dental Co. v. Dentsply Int'l, Inc., 268 F.R.D. 190, 196 (M.D. Pa. 2010). Accordingly, Federal Rule of Evidence 402 expansively permits the admission of all relevant evidence unless specifically excluded by the United States Constitution, federal statute, or other governing rules. Fed. R. Evid. 402. Relevant evidence is broadly defined as evidence "[having] any tendency to make a fact more or less probable than it would be without the evidence," with that fact being "of consequence in determining the action." Fed. R. Evid. 401. These broad principles guide the court's analysis.

## III.   DISCUSSION

### a. The defendants' motion *in limine* seeking to limit the scope of Mrs. Domenico's testimony.

On August 25, 2016, the defendants filed the present motion *in limine* and memorandum of law seeking to limit the scope of Mrs. Domenico's testimony if she were to be called as a lay witness at trial, (Doc. 41). Specifically, the defendants seek to limit the scope of her testimony to the matters inquired into during her deposition. The deposition inquiry was limited due to Mr. Domenico's assertion of the marital communications privilege. In sum, the defendants request that Mr. Domenico be prevented from waiving

the marital communications privilege at trial due to his assertion of the privilege during discovery.

During discovery, a dispute arose between the parties over Mrs. Domenico's deposition and the risk of disclosing privileged marital communications, (Doc. 41, Ex. A). Resolving this discovery matter privately, the parties agreed that Mrs. Domenico's deposition would be limited to only a few issues, (Id.). Mrs. Domenico's deposition was subsequently taken on July 22, 2016 with the defendants adhering to their agreement to limit the deposition's scope, (Id. at Ex. B). The defendants are unsure if Mr. Domenico plans to call his wife at trial at this time. However, they seek to limit any possible testimony to the scope of her deposition. Defendant's argue that allowing testimony beyond the scope of Mrs. Domenico's deposition would thwart the purpose of discovery and allow for possible unfair surprise at trial. Mr. Domenico has not responded to the defendants' motion[2].

Federal Rule of Civil Procedure 26 governs the discovery procedure in federal court. Rule 26(b)(1) broadly provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

---

[2]Failure to file a brief in opposition to a pretrial motion results in a party being deemed not to oppose such motion. MDPA LR 7.6 As such the motion may properly be denied on these grounds alone.

claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In addition, Rule 26(a) requires that parties send each other initial disclosures without request, including the names of "each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a). The purpose of these discovery rules is, in part, the prevention of unfair surprise at trial. See Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("The deposition-discovery procedure simple advances the stage at which the disclosure can be compelled . . . thus reducing the possibility of surprise."); Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 506 (D. Del. 2005); Fitz, Inc. v. Ralph Wilson Plastics Co., 184 F.R.D. 532, 535 (D.N.J. 1999) (discussing Rule 26(a)(2)(B) regarding the disclosure of expert testimony). Restricting evidence to eliminate this unfair surprise is, therefore, in accordance with the discovery rules. See e.g., Doe v. New Jersey Dept. of Corrections, 337 F. App'x 220, 226 (3d Cir. 2009).

Privileged material, however, is protected from discovery by the rules. See Fed. R. Civ. P. 26(b)(1) (only allowing for discovery of "nonprivileged matter[s]"; Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). The marital communications privilege is a privilege that prevents a spouse from

7

"disclosing confidential communications between the spouses," but only those made in confidence and intended to be confidential. United States v. Ammar, 714 F.2d 238, 258 (3d Cir. 1983).[3] It may be invoked by either spouse, including the non-testifying spouse. United States v. Hill, 967 F.2d 902, 911 (3d Cir. 1992). Comparable to the attorney-client privilege, the marital communication privilege encourages "open and honest communications between husband and wife and according a sufficient degree of privacy to marital relationships." United States v. Parker, 834 F.2d 408, 411 (4th Cir. 1987). Cf. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (stating that the purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients"). The privilege extend only to utterances, not to acts alone. Pereira v. United States, 347 U.S. 1, 7 (1954).

---

[3] The determination of whether evidence is privileged begins with Federal Rule of Evidence 501. This rule provides that "[t]he common law - - as interpreted by United States courts . . . governs a claim of privilege . . . [b]ut in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The Third Circuit has ruled that where an action involves both a federal and state law claim the federal rule is controlling. Pearson, 211 F.3d at 66. The current action involves both a federal Title VII action and state law PHRA claim. Thus, the federal claim is controlling and federal privilege law applies.

In light of the purpose of the discovery rules above and the purpose of the marital communications privilege, this court agrees that introduction of evidence at trial that was purposely withheld during discovery on the basis of the marital privilege would produce unfair surprise and an unfair advantage at trial. While this court could not find a case addressing this exact issue, the above finding is consistent with several cases addressing the same issue as it relates to the attorney-client and work-product privileges. See Fox v. California Sierra Fin. Servs., 120 F.R.D. 520, 530 (N.D. Cal. 1988) ("If the holder intends to consent to waiver of the attorney-client privilege at trial, such intention must be disclosed during the discovery stage . . . so as not to afford the one party an unfair advantage at trial."); Clark v. City of Munster, 115 F.R.D. 609, 615 (N.D. Ind.1987) ("[P]laintiffs will not be permitted to frustrate discovery by claiming a [work-product] privilege prior to trial and then waiving that privilege at trial."); Int'l Tel. & Tel. Corp. v. United Tel. Co. of Florida, 60 F.R.D. 177, 185 (M.D. Fla. 1973) ("[A] party may not insist upon the protection of a the [attorney-client] privilege for damaging communications while disclosing other selected communications because they are self-serving").

This conclusion is also consistent with findings in cases involving the Fifth Amendment privilege against self-incrimination, a privilege afforded even

greater protection given its constitutional basis. See United States v. Certain Real Prop. & Premises Known as: 4003 – 4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 84–86 (2d Cir. 1995) (finding no abuse of discretion in refusing to allow waiver of the Fifth Amendment privilege where a trial court "considers the relevant factors and acts with moderation to accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs in having the litigation conducted fairly"); Duffy v. Currier, 291 F. Supp. 810, 815 (D. Minn. 1968) (concluding that allowing a defendant to waive the privilege at trial after invoking the privilege during pre-trial examination would surprise or prejudice the opposing party). In the Fifth Amendment context, "if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." Certain Real Prop., 55 F.3d at 85.

All of the above cited logic would apply equally to the marital communications privilege. "[I]f a party is free to defeat discovery with the privilege, while having the full benefit of his or her testimony at trial, the whole process of discovery could be seriously hampered." 8 Wright, Miller & Marcus,

*Federal Practice & Procedure* §2018 (3d ed. 2010) (discussing the Fifth Amendment privilege).

During discovery, Mr. Domenico's attorney was adamant that Mrs. Domenico had no relevant, nonprivileged information to provide about the case, threatening to file a protective order if the defendants attempted to depose her, (See Doc. 41, Ex. A at 6). The parties ultimately agreed to Mrs. Domenico's deposition on limited issues, coming to a solution without the need for court intervention. These limited areas of discovery included (1) recommendations Mrs. Domenico made to Mr. Domenico that he see a psychologist , (2) non-privileged communications with Mr. and Mrs. Ertle,[4] and (3) personal observations regarding Mr. Domenico's mental and physical condition during the years he claims he was harassed at work, (See id. at 5). This court agrees that allowing inquiry beyond those areas discussed in Mrs. Domenico's deposition would introduce an unfair element of surprise into trial and thwart the underlying purpose of the discovery rules. See Hickman, 329 U.S. at 507.

Limiting the scope of testimony offered by Mrs. Domenico strikes a fair balance between Mr. Domenico's ability to assert or waive the marital

---

[4] Mrs. Ertle is another employee of Colonial.

communications privilege and the defendants interest in a fair trial and fair litigation process. Cf. Certain Real Prop., 55 F.3d at 84–86. Allowing Mr. Domenico to having the full benefit of the privilege during discovery while retaining the full benefit of Mrs. Domenico's testimony at trial would, ultimately, produce an unfair advantage over the defendants at trial. See Fox, 120 F.R.D. at 530. To avoid this result, Mrs. Domenico's testimony is limited to the issues discussed during her deposition, including (1) recommendations made to Mr. Domenico that he see a psychologist, (2) non-privileged communications with Mr. and Mrs. Ertle, and (3) her personal observations of Mr. Domenico during the years he claims he was harassed at work. Thus, the defendants motion is granted.

### b. Mr. Domenico's motion *in limine* seeking to preclude the defendants from offering evidence that lack of work was the reason for his termination

On August 26, 2016, Mr. Domenico filed the present motion *in limine* and memorandum of law seeking to exclude any evidence that a "lack of work" was the reason for his termination on July 10, 2013, (Docs. 43-44). Mr. Domenico requests that this court allow such evidence only for impeachment purposes. Mr. Domenico bases his argument on the contradictory statements made by the defendants during discovery. In their response to Mr.

Domenico's motion, the defendants state that there were various reasons for the termination and posit that they should be able to introduce these reasons into evidence, (Doc. 50, at 2).

One of Mr. Domenico's primary claims against the defendants is a claim of retaliation against him in the form of continued harassment and ultimate firing because he reported Marguerite's alleged behavior to the defendants on several occasions. The reasons given for Mr. Domenico's firing have been less than consistent throughout litigation. In their answer to Mr. Domenico's first set of interrogatories, the defendants alleged that the firing occurred due to a "lack of work." (Doc. 43-1, Ex. A at 3). They also provided this as the reason for termination on his unemployment compensation paperwork, (Id., Ex. B at 5). This explanation changed later in discovery.

During his deposition, Ralph III claimed that a lack of work was not the reason for Mr. Domenico's termination and stated that the real reason was Mr. Domenico's harassment of Marguerite, (Id., Ex. C at 13). He claimed that the "lack of work" justification was provided solely to allow Mr. Domenico to collect unemployment compensation, (Id.). In another instance, Ralph III alleged that the reason was because of statements made by Mr. Domenico threatening to take legal action against Colonial, (Id., Ex. C at 12). Similarly,

during his deposition, Mr. Vecchio stated that "[Mr. Domenico] was let go because business was slow, but that wasn't - - that wasn't the reason why he was let go," (Id., Ex. D at 16-17). Instead, Mr. Vecchio said that the reason for Mr. Domenico's firing was "[b]ecause he was making allegations that Marguerite was touching him,'" (Id. at 17). Mr. Domenico argues that any evidence tending to show that "lack of work" was the reason for his firing would simply confuse the issues and waste time in light of the above testimony.

Mr. Domenico bases his argument on Federal Rule of Evidence 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. A Rule 403 analysis requires the court to balance the evidence against the risks it may pose at trial and a district court's application of this balancing test will not be disturbed unless it is "'arbitrary and irrational.'" Abrams, 50 F.3d at 1213 (quoting Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990)). "[T]here is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403

to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343–44 (3d Cir. 2002). Highly probative evidence is, therefore, "exceptionally difficult to exclude." Id. at 1344. When in doubt, Rule 403 requires admission. Id. (citing United States v. Krenzelok, 874 F.2d 480, 482 (7th Cir. 1989)).

Any evidence tending to show the justification(s) for Mr. Domenico's July 10, 2013 termination are highly probative. The *prima facie* case for a Title VII retaliation claim requires that a plaintiff show (1) engagement in protected activity under Title VII, (2) that an adverse employment action was taken against him, and (3) a causal connection between the protected activity and the adverse employment action. Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995). The third element, the causal link, must ultimately show a retaliatory motive existed for the employer's action against the employee using traditional principles of "but-for" causation. Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013). "This requires proof that the unlawful conduct would not have occurred in the absence of the alleged wrongful actions of the employer." Id.

15

After the plaintiff establishes all of the *prima facie* elements, the defendant employer can show a legitimate, non-discriminatory reason existed for the employment action taken, therein rebutting the inference that there was an unlawful retaliatory motive for that employment action. Moore, 461 F.3d at 342. This same evidentiary framework applies to a retaliation claim under the PHRA. See Robert Wholey Co. v. Pennsylvania Human Relations Comm'n, 606 A.2d 982, 983-84 (Pa. Super. Ct. 1992). Hence, why an employer takes an employment action against an employee is an essential inquiry in a retaliation claim. "The ultimate question in a retaliation case is an intent to retaliate." Jensen v. Potter, 435 F.3d 444, 449 n. 2 (3d Cir. 2006).

All of the defendants' proffered reasons for Mr. Domenico's firing speak directly to this primary issue and whichever reason a jury concludes to be true will be dispositive of the retaliation claims. Despite the inconsistencies in the defendants' deposition testimonies, Mr. Domenico has not shown that the probative value in the evidence he seeks to exclude is "substantially outweighed" by the risks of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. The court does not agree that evidence showing "lack of work" as a basis for the firing would confuse the jury. If the defendants intend to

16

present evidence that lack of work was the reason for the termination, Mr. Domenico will have an adequate opportunity to impeach that testimony. He himself recognizes this by requesting the court continue to allow such impeachment, even if the evidence were to be excluded for other purposes.

The issue raised by Mr. Domenico is clearly one of credibility regarding the defendants' various proffered reasons for Mr. Domenico's July 10, 2013 termination. The credibility of the parties is an issue that should ultimately be left to the jury. United States v. Haut, 107 F.3d 213, 220 (3d Cir. 1997); Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35 (1944) ("It is not the function of a court to search the record for conflicting circumstantial evidence . . . [i]t is the jury, not the court, which is the fact-finding body."). Accordingly, Mr. Domenico's motion is denied.

### c. Mr. Domenico's motion *in limine* seeking to exclude evidence of his character

Mr. Domenico also filed motions *in limine* and a memorandum of law seeking to exclude certain evidence regarding his character, (See Docs. 43–44). This included evidence of his criminal record, evidence of his poor relationship with his children and usage of alcohol, evidence of a fight with a co-worker at Colonial, and derogatory comments made about Colonial's

17

female, African American customers, (Docs. 43–44). Mr. Domenico's motion to exclude evidence of his altercation with another Colonial employee is denied and his remaining motions are granted.

### i. Mr. Domenico's motion *in limine* to exclude evidence regarding an altercation with his former co-worker at Colonial

Mr. Domenico seeks to exclude evidence of an altercation with Colonial employee Frederick Hagman ("Fred") on the basis that it is prejudicial and irrelevant. The defendants specifically respond to this motion by arguing that such testimony should be allowed as impeachment if Mr. Domenico testifies that he had a good working relationship with other employees at Colonial.

Mr. Domenico's physical altercation with Fred was discussed in some depth during his deposition on June 15, 2016, (Doc. 43-1, Ex. E at 24–25). According to Mr. Domenico, he was attempting to aid in a dispute that arose between Fred and another Colonial employee Danny Brown, (Id., Ex. E at 24–25). Mr. Domenico explained that he jumped over Fred's work desk and struck him after Fred had threatened to "beat [Mr. Domenico's] face in," (Id., Ex. E at 25). Both parties engaged in the fight, but neither parties were disciplined by Colonial for their conduct, (Id.). Colonial employee Danny Brown

18

also reported that Mr. Domenico "enjoyed stirring things up and would seek out conflict, picking fights and starting trouble," (Id., Ex. F at 36).

Mr. Domenico's interaction with other employees at Colonial is relevant. Relevant evidence is that "[having] any tendency to make a fact more or less probable than it would be without the evidence," with that fact being "of consequence in determining the action." Fed. R. Evid. 401. The relevancy standard is not a high standard. Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215, 232 (3d Cir. 2004). The relevancy rules gives judges "great freedom to admit evidence." Spain, 26 F.3d at 452. However, "[it] diminishes substantially their authority to exclude evidence as irrelevant." Id. Evidence is irrelevant only when it has "*no* tendency" to prove any consequential fact in the case. Id. (emphasis in original).

Any evidence showing the justification(s) for Mr. Domenico's July 10, 2013 termination are highly probative to his retaliation claims. The reasons for an employer taking an employment action against an employee is *the* essential inquiry in a retaliation claim. Mr. Domenico's behavior at work and his interactions with other co-workers speak to these issues. In their response to this motion, the defendants specifically alleged that Mr. Domenico was fired for a variety of non-retaliatory reasons, including "general misconduct," (Doc.

19

50, at 3). In their Answer to Mr. Domenico's Amended Complaint, the defendants specifically denied that Mr. Domenico had no write-ups or performance issues. (Doc. 22, at ¶ 20). Clearly, Mr. Domenico's behavior at work is of central importance in the case and has been disputed at length between the parties. These disputed facts should be left for a jury. See Haut, 107 F.3d at 220; Tennant, 321 U.S. at 35.

In addition, this court does not find that evidence of the altercation should be excluded under Rule 403. Rule 403 excludes evidence if its probative value is "substantially outweighed" by the risk of unfair prejudice, among other considerations. Fed. R. Evid. 403. The unfair prejudice guarded against by the rule is the type of prejudice that "cloud[s] impartial scrutiny and reasoned evaluation of the facts, [and] which inhibit[s] neutral application of principles of law to the facts as found." Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 670 (3d Cir. 2002) (quoting Wagenmann v. Adams, 829 F.2d 196, 217 (1st Cir. 1987)). "[T]he fact that probative evidence helps one side prove its case obviously is not ground for excluding it under Rule 403." Id.

Mr. Domenico's performance and behavior at work are highly probative of the ultimate issues in the case, while the risk of a jury reaching a conclusion on an improper basis is low. Getting into an altercation at work is not the sort

20

of evidence that would likely inflame a juror's emotions or lead them to reach an unreasoned conclusion. Although the evidence is damaging to Mr. Domenico's claim that he was fired for retaliatory reasons, this is not a valid justification for exclusion under the rules. Accordingly, his motion is denied.

### ii. Mr. Domenico's motion *in limine* to exclude evidence regarding his criminal history

Mr. Domenico also seeks to exclude evidence of a 2007 conviction involving an altercation he had with another male patron while visiting a gentlemen's club, (Doc. 44 at 4, n. 1). Mr. Domenico was charged with various summary offenses and he ultimately pled guilty to charges of harassment, (Id.; Doc. 43-1, Ex. E at 16). This incident came to light in a written statement provided by potential non-party witness Tara Vecchio,[5] (Doc. 43-1, Ex. F at 33), statements made by Danny Brown, (Id. at 35), and Mr. Domenico's June 15, 2016 deposition, (Id. at Ex. E, 16-17). Mr. Domenico seeks to exclude this evidence substantively and as impeachment.

As explained above, Rule 403 excludes evidence if its probative value is substantially outweighed by certain trial risks. Before a Rule 403 analysis

---

[5] Tara Vecchio is an administrative employee at Colonial and Marguerite's daughter.

can begin however, evidence must meet the relevancy requirements of Rules 402 and 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is irrelevant when it has *"no* tendency" to prove any consequential fact in the case. Spain, 26 F.3d at 452 (emphasis in original).

Mr. Domenico's conviction is not relevant to any issues in this case. His conviction involved an incident outside of work with another male patron at a club. Mr. Domenico's private escapades outside of his time at Colonial have no bearing on his interaction with Marguerite and the defendants treatment of him. The defendants themselves admit that evidence of Mr. Domenico's bad character not related to his employment is not relevant, (See Doc. 50, at 2).

Application of the Rule 403 analysis would lead to the same result. The 2007 conviction has little to no probative value to the issues in this case. Mr. Domenico's private escapades and summary offense in 2007 would serve no purpose other than to taint the jury's perception of his character, which is improper under the rules. Rule 404(a) provides that "[e]vidence of a person's character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Similarly, Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show

that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). This rule bars propensity evidence, or evidence inferring that a person's conduct in the past was likely repeated in the future. Evidence of Mr. Domenico's past criminal history for propensity purposes is clearly inadmissable under Rule 404. Therefore, evidence of his actions at a gentleman's club in 2007 is not admissible to show that he harassed Marguerite at some later time.

Mr. Domenico's conviction is also not a proper basis for impeaching his testimony if he chooses to testify at trial. Rule 404 only bars evidence offered to show propensity towards a character trait during the events at issue in a case, leaving it open for other usages. See Becker v. ARCO Chemical Co., 207 F.3d 176, 189-90 (3d Cir. 2000). These possible usages include impeaching a witness's credibility. Rule 609, however, provides limitations on the court's discretion to allow or exclude criminal acts for impeachment purposes. Felonies punishable by death or imprisonment over a year *must* be admitted as impeachment, subject to Rule 403, if the witness is not a defendant. Fed. R. Evid. 609(a)(1)(A) (emphasis added). "[A]ny crime regardless of the punishment . . . *must* be admitted if the court can easily determine that establishing the elements of the crime required proving -- or the

witness's admitting -- a dishonest act or false statement." Id. At 609(a)(2) (emphasis added). "Rule 609(a)(2) must be construed narrowly to apply only to those crimes that bear on a witness' propensity to testify truthfully." Walden v. Georgia-Pacific Corp., 126 F.3d 506, 523 (3d Cir. 1997).

Applying the above, Mr. Domenico's conviction may not be used to impeach his testimony. The guilty plea did not involve a felony punishable by death or possible imprisonment greater than a year. Nor did the charge involve any dishonest acts or false statements as an element to the crime. Thus, evidence of Mr. Domenico's harassment conviction will be excluded both substantively and as impeachment and his motion is granted.

### iii. Mr. Domenico's motion *in limine* to exclude evidence concerning his relationship with his children

Mr. Domenico seeks to exclude all evidence of his relationship with his children arguing that it is prejudicial and irrelevant. During discovery, evidence of Mr. Domenico's tumultuous relationship with his children came to light in a written statement provided by Marguerite, (Doc. 43-1, Ex. F at 30), the written statement of Tara Vecchio, (Id., at Ex. F, 33), and during Mr. Domenico's deposition, (Id. at Ex. E, 14-15). It appears that Mr. Domenico's daughter was either ordered out of the home at eighteen or that she ran away of her own

24

volition (See id. at Exs. E–F, 14, 33). Mr. Domenico has also apparently been contacted by Children and Youth Services regarding his son, (Id. at Ex. E, 15).

Similar to the evidence concerning Mr. Domenico's criminal history, evidence of Mr. Domenico's rocky relationship with his children is not relevant in this Title VII and PHRA case. The defendants admit that Mr. Domenico's character traits outside of work, without more, are not relevant, (See Doc. 50, at 2). How and why Mr. Domenico's daughter left the family home and the actions of his son have no bearing on the harassment Mr. Domenico did or did not experience while working at Colonial. This evidence also has no bearing on Mr. Domenico's alleged harassment of Marguerite, which, if proven, could provide a legitimate justification for his termination. Accordingly, Mr. Domenico's motion is granted.

### iv. Mr. Domenico's motion *in limine* to exclude evidence regarding his alcohol usage

Evidence regarding Mr. Domenico's consumption and usage of alcohol is also not relevant to any claims and should be excluded. Mr. Domenico's private usage of alcohol is referenced by various non-parties in the discovery record, including Tara Vecchio's written testimony and statements made by Danny Brown, (Doc. 43-1, Ex. F at 34-35).

Mr. Domenico's alcohol consumption has no tendency to prove or disprove any material fact in his Title VII retaliation or PHRA claim. See Fed. R. Evid. 402. Nor does it speak to any of the issues supporting the defendants' defenses to his claim. Nowhere in the record have the defendants alleged that Mr. Domenico's alcohol consumption was the basis of his firing or that is was an issue while working at Colonial. As fully explained above, Mr. Domenico's character traits not related to his employment with Colonial are not relevant. The defendants do not dispute this, (See Doc. 50, at 2). Accordingly, Mr. Domenico's motion is granted.

> v. Mr. Domenico's motion *in limine* to exclude evidence of derogatory statements made to Colonial's African American customers

Lastly, Mr. Domenico seeks to exclude any reference to comments he made to or about Colonial's female African American customers. The defendants' have accused Mr. Domenico of making derogatory comments about Colonial's female, African American customers at unspecified times during his employment, (See Doc. 50-2, Ex. A at 67). During his deposition, Ralph III alleged that Mr. Domenico "hated black women," (Id.). Mr. Domenico denied these allegations during his own deposition, (Doc. 43-1, Ex. E at 55).

26

Mr. Domenico now seeks to exclude this evidence, again relying on Rule 402 and Rule 403. The defendants respond by arguing that Mr. Domenico's treatment of women more generally is relevant. They argue it is relevant as impeachment if Mr. Domenico testifies that he was respectful in his interactions with women.

While Mr. Domenico's treatment of Marguerite is relevant to this case and the defense, his treatment and/or opinions on African-American women as a subset are not. The allegations in Mr. Domenico's Title VII and PHRA claims and the defendants' responses are not related to any parties' race or racial preferences. This is a sex-based claim that primarily revolves around the issue of who was harassing whom based upon their sex. Mr. Domenico's views of female African-American's are not related to any of the issues in question. See Fed. R. Evid. 402. Certainly, if Mr. Domenico alleges at trial that he has always been respectful towards African American women at work then his credibility comes into question. However, the fact that he may or may not have singled out a particular race of women for certain opinions, while deplorable, is still not relevant.

In addition, the introduction of evidence regarding Mr. Domenico's racial preferences presents a substantial risk of confusion of the issues and unfair

27

prejudice. Rule 403 protects against the risk of confusing the issues at trial. See Fed. R. Evid. 403. It also protects against the type of unfair prejudice that "cloud[s] impartial scrutiny and reasoned evaluation of the facts, [and] which inhibit[s] neutral application of principles of law to the facts as found." Goodman, 293 F.3d at 670.

The fact that Mr. Domenico may or may not have spoken inappropriately about a particular race does not add evidence to the parties' claims. The discovery record is full of possible testimony that speaks directly to Mr. Domenico's treatment of customers more generally and his treatment of Marguerite as an individual. Meanwhile, upon hearing of Mr. Domenico's alleged opinions of African-American women as a group, a reasonable juror is likely to villainize Mr. Domenico due to character traits that, while disturbing, are not probative of the central issues in this case. Rule 403 is specifically meant to protect against this risk.

The above risks substantially outweigh the probative value the evidence might add to the defendants' defense. See Fed. R. Evid. 403. Thus, Mr. Domenico's motion is granted.

## V.    CONCLUSION

For the reasons stated above, the defendants' motion *in limine* is granted and any testimony provided by Mrs. Domenico at trial is limited to those issues inquired into during her deposition, including (1) recommendations she made to Mr. Domenico that he see a psychologist, (2) non-privileged communications with Mr. and Mrs. Ertle, and (3) Mrs. Domenico's personal observations of Mr. Domenico's mental and physical condition during the years he claims he was harassed by the defendants.

Mr. Domenico's motions *in limine* are granted in part and denied in part. His motion to exclude evidence that lack of work was a reason for his firing is denied. His motion to exclude evidence of an altercation that occurred with another Colonial employee is denied. His motions to exclude certain character evidence of his criminal record, his relationship with his children, his alcohol consumption, and evidence of derogatory statements made to Colonial's African-American customers is granted. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0530-01.wpd